## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOHAMED ALAM,<br><br>     Plaintiff,<br><br> v.<br><br>O & S GENERAL CONTRACTOR CORP.,<br>OMAR MOHAMED and NFN BABUL, in their<br>individual and professional capacities,<br><br>     Defendants. | Civil Case No: 1:18-cv-2069<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mohamed Alam, by and through his undersigned attorneys, Faruqi & Faruqi, LLP, hereby alleges the following against O & S General Contractor Corp. ("O&S"), Omar Mohamed, and NFN Babul (collectively, "Defendants"):

### NATURE OF ACTION

1. Mr. Alam performed construction work for Defendants at 164 South 4th Street Brooklyn, New York, 11211 (the "Jobsite") for a total of 40 days between June and August 2016.

2. Mr. Alam performed no fewer than 403 hours of work for Defendants at the Jobsite, for which he was promised an hourly rate of $25 and an overtime rate of $50.

3. However, Defendants refused to pay Mr. Alam any wages at all.

4. When Mr. Alam sought payment for his hours worked, Defendants claimed that he was an independent contractor and, thus, not entitled to any payment despite Defendants' express promises to the contrary.

5. Mr. Alam brings this action to recover his unpaid wages and various statutory damages, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the New

York Labor Law, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.* ("NYLL"), and the New York

State Construction Industry Fair Play Act, N.Y. Lab. Law §§ 861, *et seq.* (the "Fair Play Act").

## JURISDICTION AND VENUE

6.      Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter over this

action because it involves a federal question regarding the deprivation of Plaintiff's rights under

the FLSA.

7.      The Court also has supplemental jurisdiction over Plaintiff's related claims arising

under State law pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial

part of the events or omissions giving rise to this action occurred in this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Defendants'

principal place of business is located in this district.

## PARTIES

**A.      Plaintiff Mohamed Alam**

10.      Plaintiff Mohamed Alam is a resident of the State of New York and was employed

by Defendants from on or around June 6, 2016 to on or around August 16, 2016.

11.      At all relevant times, Plaintiff Mohamed Alam was an "employee" or "individual"

within the meaning of all applicable statutes and regulations.

**B.      Defendant O & S General Contractor Corp.**

12.      Defendant O & S General Contractor Corp. is a domestic corporation with its

principal place of business located in the County of Kings.

13.      At all relevant times, Defendant O & S General Contractor Corp. controlled and

directed the terms of Plaintiff Mohamed Alam's employment and compensation.

14.     At all relevant times, Defendant O & S General Contractor Corp. maintained and exercised its power to hire, fire, discipline, and promote Plaintiff Mohamed Alam.

15.     At all relevant times, Defendant O & S General Contractor Corp. maintained control, oversight, and direction of Plaintiff Mohamed Alam, including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to him.

16.     At all relevant times, Defendant O & S General Contractor Corp. was an "employer" within the meaning all applicable statutes and regulations.

**C.      Defendant Omar Mohamed**

17.     Defendant Omar Mohamed owns and operates Defendant O & S General Contractor Corp.

18.     At all relevant times, Defendant Omar Mohamed controlled and directed the terms of the Plaintiff Mohamed Alam's employment and compensation.

19.     At all relevant times, Defendant Omar Mohamed maintained and exercised his power to hire, fire, discipline, and promote Plaintiff Mohamed Alam.

20.     At all relevant times, Defendant Omar Mohamed maintained control, oversight, and direction of Plaintiff Mohamed Alam, including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to him.

21.     At all relevant times, Defendant Omar Mohamed was an "employer" within the meaning of all applicable statutes and regulations.

**D.      Defendant NFN Babul**

22.     Defendant NFN Babul is a foreman at O & S General Contractor Corp.

23.     At all relevant times, Defendant NFN Babul controlled and directed the terms of the Plaintiff Mohamed Alam's employment and compensation.

24.     At all relevant times, Defendant NFN Babul maintained and exercised his power to hire, fire, discipline, and promote Plaintiff Mohamed Alam.

25.     At all relevant times, Defendant NFN Babul maintained control, oversight, and direction of Plaintiff Mohamed Alam, including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to him.

26.     At all relevant times, Defendant NFN Babul was an "employer" within the meaning of all applicable statutes and regulations.

## FACTS

### A.     Background

27.     O&S is a general construction business that performs interior and exterior construction services on residential and commercial properties.

28.     At some point during the first half of 2016, O&S won a bid to perform services, including demolition, brick work and cement work, at the Jobsite.

29.     On June 3, 2016, Defendants hired Mr. Alam to work at the Jobsite.

30.     Defendants agreed to pay Mr. Alam at a rate of $25 per hour for all hours worked under 40 hours in a workweek, and at a rate of $50 per hour for all hours worked in excess of 40 hours in a workweek.

### B.     Defendants' Failure to Pay Wages

31.     From June 6, 2016 through August 16, 2016, Defendants failed to pay Mr. Alam any wages at all.

32.     From June 6, 2016 through June 10, 2016, Mr. Alam worked Monday through Friday, 8 AM until 8 PM, for a total of 60 hours.

33.     However, as of June 17, 2016, seven calendar days after the end of the previous week in which wages were earned, Mr. Alam had still not received any pay for his hours worked during the week ending June 10, 2016.

34.     From June 13, 2016 through June 17, 2016, Mr. Alam worked Monday through Friday, 8 AM until 8 PM, for a total of 60 hours.

35.     However, as of June 24, 2016, seven calendar days after the end of the previous week in which wages were earned, Mr. Alam had still not received any pay for his hours worked during the week ending June 17, 2016.

36.     From June 20, 2016 through June 24, 2016, Mr. Alam worked Monday through Friday, 8 AM until 4 PM, for a total of 40 hours.

37.     However, as of July 1, 2016, seven calendar days after the end of the previous week in which wages were earned, Mr. Alam had still not received any pay for his hours worked during the week ending June 24, 2016.

38.     From June 27, 2016 through July 1, 2016, Mr. Alam worked Monday through Friday, 8 AM until 4 PM, for a total of 40 hours.

39.     However, as of July 8, 2016, seven calendar days after the end of the previous week in which wages were earned, Mr. Alam had still not received any pay for his hours worked during the week ending July 1, 2016.

40.     From July 4, 2016 through July 8, 2016, Mr. Alam worked Wednesday through Friday, 8 AM until 4 PM, for a total of 24 hours.

41.    However, as of July 15, 2016, seven calendar days after the end of the previous week in which wages were earned, Mr. Alam had still not received any pay for his hours worked during for the week ending July 8, 2016.

42.    From July 11, 2016 through July 15, 2016, Mr. Alam worked Monday through Friday, 8 AM until 4 PM, for a total of 40 hours.

43.    However, as of July 22, 2016, seven calendar days after the end of the previous week in which wages were earned, Mr. Alam had still not received any pay for his hours worked during the week ending July 15, 2016.

44.    From July 25, 2016 through July 29, 2016, Mr. Alam worked Monday through Friday, 8 AM until 8 PM, for a total of 60 hours.

45.    However, as of August 5, 2016, seven calendar days after the end of the previous week in which wages were earned, Mr. Alam had still not received any pay for his hours worked during the week ending July 29, 2016.

46.    From August 8, 2016 through August 12, 2016, Mr. Alam worked Monday through Friday, 8 AM until 8 PM, for a total of 60 hours.

47.    However, as of August 19, 2016, seven calendar days after the end of the previous week in which wages were earned, Mr. Alam had still not received any pay for his hours worked during the week ending August 12, 2016.

48.    From August 15, 2016 through August 19, 2016, Mr. Alam worked Monday, from 8 AM until 8 PM, and Tuesday, 8 AM until 3 PM, for a total of 19 hours.

49.    However, as of August 26, 2016, seven calendar days after the end of the previous week in which wages were earned, Mr. Alam had still not received any pay for his hours worked during the week ending August 19, 2016.

50.    On August 16, 2016, Mr. Alam's employment on the Jobsite came to an end, as Mr. Alam suffered an injury and was no longer able to perform his duties.

51.    Again, to date, Mr. Alam still has not been compensated for any of his at least 403 hours worked at the Jobsite.

**C.    Other NYLL Violations**

52.    Throughout the relevant time period, Defendants have failed to promptly pay Mr. Alam for any of his hours worked.

53.    Specifically, throughout Mr. Alam's employment, Defendants failed to pay him all wages owed on a weekly basis and/or not later than seven calendar days after the end of the week in which the wages were earned.

54.    Mr. Alam was to receive his first payment of wages no later than June 17, 2016, one week after the completion of his first week of work at the Jobsite.

55.    However, Mr. Alam was not paid any wages on June 17, 2016, or at any point thereafter, despite working at least 403 hours for Defendants.

56.    To be sure, on September 6, 2016, Defendants furnished Mr. Alam with a $3,000 check.

57.    However, Defendants furnished this check to Mr. Alam not as a payment of wages but, rather, for the express purpose of paying expenses associated with Mr. Alam's work at the Jobsite.

58.    Indeed, Mr. Alam used the $3,000 check to pay for two dumpsters used in connection with his work on the Jobsite.

59.    Further, throughout the relevant time period, Defendants failed to provide accurate wage statements to Mr. Alam.

60.     Pursuant to the NYLL, Defendants were required to tender to Mr. Alam an accurate wage statement with his first payment of wages, which was to be no later than June 17, 2016, one week after Mr. Alam's first week of work at the Jobsite.

61.     However, Defendants did not provide any wage statements to Mr. Alam on June 17, 2016, or at any time thereafter.

62.     Defendants also failed to provide Mr. Alam with a Notice of Pay Rate within ten days of his first day of employment, or at any time thereafter.

**D.     Defendants' Unlawful Misclassification Of Mr. Alam As An Independent Contractor**

63.     When Mr. Alam attempted to recover his unpaid wages from Defendants, Defendants claimed that Mr. Alam was an independent contractor – as opposed to an employee – and thus Defendants were entitled to renege on their agreement to pay him for his work.

64.     Mr. Alam is indisputably entitled to the protections of the FLSA and NYLL because he is an employee, rather than an independent contractor.

65.     In 2010, the New York State legislature enacted the New York State Construction Industry Fair Play Act, N.Y. Lab. Law §§ 861, *et seq*. (the "Fair Play Act").

66.     The Fair Play Act was put into place to combat "dangerous levels of employee misclassification fraud" within the construction industry.  N.Y. Lab. Law § 861-a.

67.     Indeed, the New York State Legislature found that "[u]nscrupulous employers are intentionally reporting employees as independent contractors to state and federal authorities," and that "there has been an explosion of employers who operate in the underground economy and fail to report all or a sizable portion of their workers."  *Id.*

68.     The New York State Legislature further found that such unlawful misclassifications are even more common within New York City, where Mr. Alam worked:  "[A]s many as fifty thousand New York city construction workers – nearly one in four – are either misclassified as

independent contractors or are employed by construction contractors completely off the books." *Id.*

69.    Sadly, Mr. Alam is merely another in a long line of construction industry employees who fall victim to such unlawful misclassifications.

70.    The Fair Play Act creates a presumption of employment in the construction industry and provides the following test to determine if the employment status of someone working in the construction industry. *See id.* at § 861-c.

71.    Pursuant to the Fair Play Act, "[a]ny person performing services for a contractor shall be classified as an employee unless all of the following criteria are met:" (i) the individual is "free from control and direction in performing the job, both under his or her contract and in fact; (ii) "the services [are] performed outside the usual course of business" for the employer;" and (iii) "the individual is customarily engaged in an independently established trade, occupation, profession, or business that is similar to the service at issue." *Id.*

72.    Mr. Alam was, in fact, not free from control or director in performing work on the Jobsite, and he was not subject to a contract.

73.    The construction services Mr. Alam performed were within the usual course of business for Defendants.

74.    During the relevant period, Mr. Alam was not customarily engaged in an independently established trade, occupation, profession, or business similar to the construction services at issue.

75.    Specifically, when Mr. Alam did not work for Defendants, he worked at a restaurant as a busser and dish washer.

76.    Indeed, none of the three factors – let alone all of them – exist here.

77.     Further, Defendants exercised extensive control over Mr. Alam, including by setting his pay rate, daily schedule, priority of assignments to complete, monitoring his work product.

78.     Defendants also controlled Mr. Alam's compensation and maintained the authority to fire him at any time.

79.     Accordingly, Mr. Alam is an employee, not an independent contractor.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE

80.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

81.     Plaintiff was an employee under the FLSA and all other applicable statutes or regulations.

82.     Defendants were employers under the FLSA and all other applicable statutes or regulations.

83.     The FLSA requires covered employers, including Defendants, to compensate employees at least the federal minimum wage for all hours worked under 40 hours in a workweek.

84.     Plaintiff was not exempt from the requirement that his employer pay him the federal minimum wage, and thus he is entitled to be paid at least the federal minimum wage for all hours worked under 40 hours in a workweek during the full statute of limitations period.

85.     Throughout the relevant period, Defendants engaged in a policy and practice of failing to compensate Plaintiff at least the federal minimum wage for all hours worked under 40 hours in a workweek, instead electing not to pay him at all.

86.     As a result of Defendants' failure to compensate Plaintiff at least the federal minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

87.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the FLSA.

88.     Defendants' violations of the FLSA have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**

89.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

90.     Plaintiff was an employee under the FLSA and all other applicable statutes or regulations.

91.     Defendants were employers under the FLSA and all other applicable statutes or regulations.

92.     The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

93.     Plaintiff was not exempt from the requirement that his employer pay him overtime wages, and thus he is entitled to be paid at a rate not less than one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek.

94.    Throughout the relevant period, Defendants engaged in a policy and practice of failing to compensate Plaintiff at a rate not less than one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek, instead electing not to pay him at all.

95.    As a result of Defendants' failure to compensate Plaintiff at a rate not less than one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

96.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the FLSA.

97.    Defendants' violations of the FLSA have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES**

98.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

99.    Plaintiff was an employee under the FLSA and all other applicable statutes or regulations.

100.    Defendants were employers under the FLSA and all other applicable statutes or regulations.

101.    The FLSA requires covered employers, including Defendants, to pay employees all compensation earned in a particular workweek on the regular payday for the period in which such workweek ends.

102.    Plaintiff was not exempt from the requirement that his employer timely pay his wages.

103.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiff all compensation earned in a particular workweek on the regular payday for the period in which such workweek ends, instead electing not to pay him at all.

104.    As a result of Defendants' failure to pay Plaintiff all compensation earned in a particular workweek on the regular payday for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

105.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the FLSA.

106.    Defendants' violations of the FLSA have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE

107.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

108.    Plaintiff was an employee under the NYLL and all other applicable statutes or regulations.

109.    Defendants were employers under the NYLL and all other applicable statutes or regulations.

110.    The NYLL requires covered employers, including Defendants, to compensate employees at least the State minimum wage for all hours worked under 40 hours in a workweek.

111.    Plaintiff was not exempt from the requirement that his employer pay him the State minimum wage, and thus he is entitled to be paid at least the State minimum wage for all hours worked under 40 hours in a workweek during the full statute of limitations period.

112.    Throughout the relevant period, Defendants engaged in a policy and practice of failing to compensate Plaintiff at least the State minimum wage for all hours worked under 40 hours in a workweek, instead electing not to pay him at all.

113.    As a result of Defendants' failure to compensate Plaintiff at least the State minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

114.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the NYLL.

115.    Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY FOR ALL HOURS WORKED

116.    Plaintiffs hereby repeats and realleges the foregoing allegations as if set forth fully herein.

117.    Plaintiff was an employee under the NYLL and all other applicable statutes or regulations.

118.    Defendants were employers under the NYLL and all other applicable statutes or regulations.

119.    The NYLL requires covered employers, including Defendants, to pay employees at their agreed upon wages for all hours worked.

120.    Plaintiff was not exempt from the requirement that his employer pay him his agreed upon wages, and thus he is entitled to be paid at his agreed upon wages for all hours worked during the full statute of limitations period.

121.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff at his agreed upon wages for all hours worked.

122.    Specifically, at the outset of Plaintiff's employment, Defendants agreed to pay him at an hourly rate of $25 for all hours worked under 40 hours in a workweek, and an overtime rate of $50 for all hours worked in excess of 40 hours in a workweek.

123.    However, Defendants failed to pay Plaintiff any wages at all.

124.    As a result of Defendants' failure to compensate Plaintiff at his agreed upon wages for all hours worked, Defendants have violated the NYLL and/or applicable regulations thereunder.

125.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the NYLL.

126.    Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME**

127.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

128.    Plaintiff was an employee under the NYLL and all other applicable statutes or regulations.

129.   Defendants were employers under the NYLL and all other applicable statutes or regulations.

130.   The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

131.   Plaintiff was not exempt from the requirement that his employer pay him overtime wages, and thus he is entitled to be paid at a rate not less than one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek.

132.   Throughout the relevant period, Defendants engaged in a policy and practice of failing to compensate Plaintiff at a rate not less than one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek, instead electing not to pay him at all.

133.   As a result of Defendants' failure to compensate Plaintiff at a rate not less than one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

134.   Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the NYLL.

135.   Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES

136.   Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

137.    Plaintiff was an employee under the NYLL and all other applicable statutes or regulations.

138.    Defendants were employers under the NYLL and all other applicable statutes or regulations.

139.    The NYLL requires covered employers, including Defendants, to pay employees in accordance with agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer.

140.    Plaintiff was not exempt from the requirement that his employer timely pay his wages.

141.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiff compensation semi-monthly, instead electing not to pay him at all.

142.    As a result of Defendants' failure to compensate Plaintiff at least semi-monthly, Defendants have violated the NYLL and/or applicable regulations thereunder.

143.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the NYLL.

144.    Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO FURNISH WAGE STATEMENTS

145.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

146.   Plaintiff was an employee under the NYLL and all other applicable statutes or regulations.

147.   Defendants were employers under the NYLL and all other applicable statutes or regulations.

148.   The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages."

149.   Plaintiff was not exempt from the requirement that his employer provide him with accurate wage statements.

150.   Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide accurate wage statements.

151.   As a result of Defendants' failure to furnish accurate wage statements to Plaintiff, Defendants have violated the NYLL and/or applicable regulations thereunder.

152.   Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide accurate wage statements to Plaintiff in accordance with the NYLL.

153.   Defendants' violations of the NYLL have significantly damaged Plaintiff and entitled him to recover $250 for each work day the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## NINTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO FURNISH NOTICES OF PAY RATE

154.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

155.    At all relevant times, Plaintiff was an employee under the NYLL and all other applicable statutes or regulations.

156.    At all relevant times, Defendants were employers under the NYLL and all other applicable statutes or regulations.

157.    The NYLL requires covered employers, including Defendants, to provide employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer [ ];  the name of the employer;  any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer;  plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

158.    Plaintiff was not exempt from the requirement that his employer provide him with a Notice of Pay Rate.

159.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide a Notice of Pay Rate to Plaintiff.

160.    As a result of Defendants' failure to provide a Notice of Pay Rate to Plaintiff, Defendants have violated the NYLL and/or applicable regulations thereunder.

161.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide a Notice of Pay Rate to Plaintiff in accordance with the NYLL.

162.    Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle him to recover $50 for each work day the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## TENTH CAUSE OF ACTION
## VIOLATIONS OF THE FAIR PLAY ACT: MISCLASSIFICATION

163.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

164.    At all relevant times, Plaintiff was an "individual" within the meaning of the Fair Play Act and all other applicable statutes or regulations.

165.    At all relevant times, Defendants were "employers" within the meaning of the Fair Play Act and all other applicable statutes or regulations.

166.    The Fair Play Act prohibits covered employers, including Defendants, from willfully failing to properly classify individuals as employees.

167.    Throughout the relevant period, Defendants engaged in a policy and practice of willfully failing to properly classify Plaintiff as an employee, instead classifying him as an independent contractor.

168.    Defendants knew or should have known that this conduct was prohibited by the Fair Play Act.

169.    As a result of Defendants willful failure to properly classify Plaintiff as an employee, Defendants have violated the Fair Play Act and/or applicable regulations thereunder.

170.    Defendants' violations of the Fair Play Act have significantly damaged Plaintiff and entitle him to recover a civil penalty of $2,500.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Declare that the practices complained of herein are unlawful under applicable federal and State law;

B.     Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     Determine the damages sustained by Plaintiff as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiff, plus such pre-judgment and post-judgment interest as may be allowed by law;

D.     Determine the damages sustained by Plaintiff as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of the Plaintiff, plus such pre-judgment and post-judgment interest as may be allowed by law;

E.     Award Plaintiff an additional amount as liquidated damages because Defendants' violations were willful and/or without a good faith basis;

F.     Award Plaintiff his reasonable attorneys' fees and costs and disbursements in this action including, but not limited to, any accountants' or experts' fees; and

G.     Grant Plaintiff such other and further relief that the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues of facts and damages.

Date:  New York, New York           Respectfully submitted,
       April 6, 2018

**FARUQI & FARUQI, LLP**

By:   */s/ Innessa M. Huot*
       Innessa M. Huot
       Alex J. Hartzband
       Patrick J. Collopy

685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile:  212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com
pcollopy@faruqilaw.com

*Attorneys for Plaintiff*